1  Kenneth S. Kasdan, Esq. (AZ SBN 022203)
2  Stephen L. Weber, Esq. (AZ SBN 022751)
   Michael J. White, Esq. (AZ SBN 018692)
3  James W. Fleming, Esq. (AZ SBN 027967)
   **KASDAN LIPPSMITH WEBER TURNER LLP**
4  3200 N. Central Ave., Suite 2100
5  Phoenix, AZ 85012
   Phone: 602-224-7800
6  Fax: 602-224-7801
7  E-Mail: kasdancourt@kasdancdlaw.com

8  Attorneys for Plaintiffs and all those similarly situated

9              **UNITED STATES DISTRICT COURT**

10             **FOR THE DISTRICT OF ARIZONA**

11  JAMES AND SUSAN GORAY, husband and
    wife, on behalf of themselves and all persons
12  similarly situated,

13                        Plaintiffs,

14         v.

15  LUMBER LIQUIDATORS, INC., a Delaware
    corporation; and DOES 1-100, inclusive,
16

17                        Defendants.

18

19

20

21

22

**Case No.:**

**CLASS ACTION COMPLAINT FOR:**

1. **VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*);**
2. **VIOLATIONS OF ARIZONA'S CONSUMER FRAUD ACT (A.R.S. § 44-1521, *et seq.*); AND**
3. **STRICT PRODUCTS LIABILITY.**

**AND**

**DEMAND FOR JURY TRIAL**

23         Plaintiffs James and Susan Goray, on behalf of themselves and all others similarly

24  situated, by and through their undersigned counsel, bring this Complaint in class action and

25  allege as follows:

26

27

28

1

# I.

## INTRODUCTION

1.      Defendant Lumber Liquidators, Inc. has been selling composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks and cause potentially terminal illnesses. The formaldehyde emissions from certain Lumber Liquidators products far exceed the maximum limits allowed by the California Air Resources Board ("CARB") and the federal Formaldehyde Standards Act which adopted the CARB formaldehyde standards on a nationwide basis.  For nearly two years, and possibly longer, Lumber Liquidators has known that flooring products it has manufactured in China, for installation by consumers in homes in the United States, emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to falsely label these products as being compliant with all CARB formaldehyde standards and to falsely state on its website and elsewhere that its products "meet the highest quality and environmental standards." As a result, consumers have been buying flooring products from Lumber Liquidators that are unsafe.

2.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (i.e., hardwood, plywood, particleboard, or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin. The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.      Formaldehyde is a common ingredient in the glue used in the laminate flooring base layer. Formaldehyde is a colorless, flammable gas at room temperature and has a strong odor.  If used in low levels, it will quickly dissipate during installation. However, if used in higher levels, as was done here, the formaldehyde emanates from the flooring over time. Formaldehyde is a known carcinogen.[1]   Long-term exposure to

---

[1] *See, e.g.,* National Toxicology Program, U.S. Department of Health and Human Services (HHS), 12th Report on Carcinogens, June 10, 2011.

formaldehyde is linked to increased risk of cancer of the nose and sinuses, including nasopharyngeal and oropharyngeal cancer, and is also known to cause lung cancer and leukemia. Short-term exposure to formaldehyde causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea. It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particularly acute health risk to children.

4.     Lumber Liquidators supervises and controls the manufacturing of composite laminate wood flooring products in several mills in China. Lumber Liquidators also packages, distributes, markets and/or sells laminate wood flooring products that have been manufactured in China to consumers in the United States.

5.     From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring products from several nationwide retail outlets, including Lowe's, Home Depot, and Lumber Liquidators.  Of the dozens of products tested, by far the highest formaldehyde levels were found in the laminate wood flooring sold by Lumber Liquidators that was produced in China. Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB and adopted by the federal Formaldehyde Standards Act. Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards. The list of products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth below in paragraph 24.

6.     Lumber Liquidator's labels on its Chinese laminate wood flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "CARB CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde."

7.     On July 7, 2010, President Obama signed into law the Formaldehyde Standards Act which amends the Toxic Substances Control Act ("TSCA") through the addition of Title VI to the TSCA.  The statute establishes formaldehyde emission standards

that are identical to the CARB Air Borne Toxic Control Measure standards for formaldehyde in hardwood, plywood, medium-density fiberboard, and particleboard sold, supplied, offered for sale, or manufactured in the United States and directs the Environmental Protection Agency to implement specific regulations.

8.      In 2014 and early 2015, CBS's "60 Minutes" conducted an independent investigation into Lumber Liquidators' Chinese-made laminate wood flooring products. Investigators purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores around the United States and sent samples for testing to two certified labs. Of the 31 samples, only one was compliant with CARB formaldehyde emissions standards.  Significantly, "[s]ome were more than 13 times over the California limit."[2]

9.      60 Minutes also sent undercover investigators to three different mills in China that manufacture laminates and flooring on behalf of Lumber Liquidators. 60 Minutes reported that:

> Employees at the mills openly admitted that they used core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted falsely labeling the company's laminate flooring as CARB compliant.[3]

10.     Along with its product labels, Lumber Liquidators represents on its website and in its warranties that its flooring products comply with strict formaldehyde standards. Lumber Liquidators has made false, deceptive, and misleading statements that its flooring products comply with CARB formaldehyde standards. Lumber Liquidators' website falsely states, "We not only comply with laws – we exceed them." Lumber Liquidators promises its customers the "Highest Quality Flooring. GUARANTEED."[4]

_____

[2] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/.

[3] *Id.*
[4] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality.

11.     Lumber Liquidators has continually sold these products to customers in the United States at its 200 retail stores, including to its Arizona customers at its six retail stores throughout Arizona, through its retail website, www.lumberliquidators.com, and using its toll free customer service telephone line.

12.     Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and that was of a type found to have formaldehyde levels that exceed CARB formaldehyde limits. Plaintiffs seek to represent themselves and similarly situated persons in Arizona who have purchased Defendant's laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in Arizona at any time from January 1, 2011 through the date of judgment herein ("the putative class" and "Class Period").

13.     Plaintiffs seek restitution of monies they and the putative class spent on Defendant's flooring products and damages on behalf of themselves and the putative class to be proven at trial.

## II.

## JURISDICTION

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different from the Defendant.

15.     This Court has personal jurisdiction over the parties in this action by the fact that the Defendant is a corporation that is licensed to do business in the state of Arizona or otherwise conduct business in the State of Arizona.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and the named Plaintiffs reside in this District.

## III.

## PARTIES

17.     Plaintiffs James and Susan Goray are residents of Buckeye, Arizona.

18.     Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia. Lumber Liquidators, Inc. distributes, markets, and/or sells laminate wood flooring products in Arizona.

**IV.**

**FACTUAL ALLEGATIONS**

19.     In 1988, the State of California officially listed formaldehyde (gas) as a chemical known to cause cancer.

20.     In 1992, CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

21.     CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007. The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases. Cal. Code Regs., tit. 17, § 93120.2(a).

22.     The CARB Regulations apply to composite wood ("laminate") products including flooring. Cal Code-Regs., tit. 17, § 93120.2(a).

23.     The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm"). The Phase 2 Emission Standard for medium-density fiberboard ("MDF") dictates that as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde. The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., fit. 17, § 93120.2(a). (The formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")

24. Defendant supervises and/or controls the manufacturing and packaging of laminate wood flooring products in China that Defendant then distributes, markets, and/or sells in the United States, including Arizona. Those laminate wood flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those laminate wood flooring products include, but are not limited to, the following:

- 8 mm Bristol County Cherry Laminate Flooring;
- 8 mm Dream Home Nirvana French Oak Laminate Flooring;
- 8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;
- 12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring;
- 12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring;
- 12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;
- 12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;
- 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;
- 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring;
- 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;
- 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;
- 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring;
- 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

➢ 12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

➢ 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

➢ 12 mm Dream Home St. James African Mahogany Laminate Flooring;

➢ 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

➢ 12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

➢ 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

➢ 12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring;

➢ 12 mm Dream Home St. James Golden Acacia Laminate Flooring;

➢ 12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

➢ 12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring;

➢ 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring; and

➢ 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

25.     CARB formaldehyde emission regulations apply to all of the above-listed flooring products.

26.     Upon information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 24 above are manufactured in China using a common formula, design, or process.

27.     Upon information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 24 above emit formaldehyde gas at levels that exceed the CARB limits.

28.     Despite unlawful levels of formaldehyde emissions from its laminate wood flooring products, Defendant misrepresents to consumers on their website, product

packaging, and warranties that their laminate wood flooring products meet the CARB standards for formaldehyde emissions.

29.     Lumber Liquidators' website leads consumers to believe that the company's laminate wood flooring products comply with the CARB formaldehyde standards when they do not. The website states as follows:

Q:  Does Lumber Liquidators comply with CARB regulations?

A:  Yes. To comply with the CARB standards, applicable laminate and engineered flooring and accessories sold by Lumber Liquidators are purchased from manufacturers whose production methods have been certified by a Third Party Certifier approved by the State of California to meet the CARB standards; or from suppliers who source composite wood raw materials only from certified manufacturers. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their composite wood products conform to the specified emission limits.

Q:  Does CARB only apply to California?

A:   Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.** [Emphasis in original.]

Q:  What extra steps does Lumber Liquidators take to ensure compliance?

A: In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.** This is done as a monitoring activity to validate ongoing quality control. [Emphasis in original.][5]

---

[5] http ://www. Lumberliquidators.com/11/flooring/ca-air-resources-boardregulations? Wt.ad GLOBAL_ FOOTER_ CaliRegCARB.

30.     After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting – edge technology to provide our customers with top quality and high value flooring.[6]

31.     In addition, the product packaging for Lumber Liquidators' laminate wood flooring states: "CARB CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde." Upon information and belief, this statement is presented on all Lumber Liquidators' laminate flooring product packaging regardless of whether or not the flooring inside the packaging complies with the CARB standards.

32.     Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

33.     Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Lumber Liquidators' website states that it has Third-Party Certifiers approve its flooring products to meet CARB standards:

Regulations and Lumber Liquidators' Compliance

---

[6] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/.

10

1

2

3          The California Air Reform Bill (CARB) requires that products
       containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood
       Plywood Composite Core (HWPCC), Particleboard and MDF be tested
4      for emissions and products not meeting the strict standards for
       emissions may not be sold in California.

5

6          The Environmental Protection Agency has drafted national standards for
       formaldehyde emissions in composite wood products that are similar to
       those of California. Those standards have not yet been enacted.

7

8          All laminates and engineered flooring products sold by Lumber
       Liquidators are purchased from mills whose production method has
9      been certified by a Third-Party Certifier approved by the State of
       California to meet the CARB standards. The scope of the certification
10     by the Third-Party Certifier includes the confirmation that the
       manufacturer has implemented the quality systems, process controls,
11     and testing procedures outlined by CARB and that their products
       conform to the specified formaldehyde emission limits. The Third-Party
12     Certifier also provides ongoing oversight to validate the manufacturers'
       compliance and manufacturers must be periodically recertified. Though
13     it currently applies only to products sold in California, Lumber
14     Liquidators made a decision to require all of our suppliers to comply
       with CARB regardless of whether we intended to sell the products in
15     California or any other state/country. In addition, our suppliers
       manufacture their products in accordance with the European standard
16     which has stricter guidelines than the California. In addition to the
       CARB requirements, Lumber Liquidators regularly selects one or more
17     products from each of its suppliers and submits them for independent
       third-party lab testing. This is done as a monitoring activity to validate
18     ongoing compliance.[7]

19          34.    Lumber Liquidators materially misrepresents the safety of its laminate wood

20
flooring products by advertising and representing that its flooring products are compliant

21
with the CARB limit when in fact they are not.

22
            36.    These laminate wood flooring products have been sold by Defendant for use

23
in the United States, including Arizona.

24

25

26

27

28
_____

[7] http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101.

11

37.     Defendant continues to distribute and sell its laminate wood flooring products to customers in the United States, including Arizona, with the representation that they are CARB compliant, even though they are not.

38.     On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its laminate wood flooring products as CARB compliant.

39.     Defendant made public statements to consumers that the laminate wood products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and that Lumber Liquidators takes measures to ensure full compliance by its suppliers.  However, at the same time, Defendant acknowledged the opposite in its February 25, 2014 10-K filing with the United States Securities and Exchange Commission (""SEC"), stating: "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, *we do not control our suppliers*. Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner could . . . expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[8] (Emphasis added.)

40.     Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers to ensure that they comply with CARB standards, and Defendant continues to sell to Arizona consumers non-CARB complaint laminate wood flooring products that Defendant obtains from those suppliers.

---

[8] Lumber Liquidators February 25, 2014 10-K at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127 In the same filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id.* at p. 5.

41.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to the California Air Resources Board. The letter and article documented, based on testing performed by a certified laboratory, high formaldehyde levels in Chinese-made laminate wood flooring products sold by Lumber Liquidators.  Enclosed with the letter were the actual test results showing that the tested flooring product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and half times the maximum formaldehyde emission level.  Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

42.     On information and belief, high-formaldehyde-content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins. By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

43.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's laminate wood flooring products.  *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, Case No. 4:2013-CV-00157 (E.D. Virginia).  This case is currently pending.  Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its laminate wood flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

44.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Ellen of Columbus, Ohio who posted on the Consumer Affairs website on March 2, 2015:

> Never again will I shop at or recommend Lumber Liquidators. I am disgusted my family is at risk and my child is sick. My baby is 6 months old and has had chronic wheezing since a month old. We and the

doctors have tried almost everything and still his respiratory issues will not clear up. We installed laminate flooring on our entire bottom level a few years ago and that laminate flooring is one with extreme levels of formaldehyde. Thank you Lumber Liquidators for causing harm to my family. We will now be living on a cement slab until we can afford flooring.[9]

45.     Based on lawsuits, articles, and blog posts, Defendant knew or should have known that its laminate wood flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant. Instead, Defendant has sold and continues to sell laminate wood flooring products in the United States, including Arizona that exceed the CARB limit while continually representing to consumers that those products are CARB compliant.

46.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the class would reasonably fear for their safety by allowing the laminate flooring to remain in their homes. It would therefore be reasonably prudent to incur the cost of replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

**V.**

**FACTS RELATING TO NAMED PLAINTIFFS**

47.     In October, 2013, Plaintiffs James and Susan Goray purchased approximately 380 square feet of 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring at a Lumber Liquidators store located in Peoria, Arizona. On information and belief, the flooring was produced at the laminate mill in China.

48.     The Gorays purchased the laminate flooring for the purpose of installing it in their Buckeye, Arizona home that they share with their beloved pet dogs, Domino, Lilly, and Sophy.  Mrs. Goray previously worked in the pet food industry and is aware of the risks inherent with the Chinese using deceptive practices in the addition of a derivative of

---

[9] http://www.consumeraffairs.com/homeowners/lumber_liquidators.html.

melamine in certain Chinese-made pet food products.  She therefore set out to ensure that the formaldehyde levels in the Chinese-made Lumber Liquidators' flooring complied with the law.

49.     Prior to purchasing the laminate flooring from Lumber Liquidators, the Gorays viewed Lumber Liquidators' website and saw the representations Lumber Liquidators made regarding the safety and compliance of its products.

50.     At the time they purchased the laminate flooring from the Lumber Liquidators retail store, the Gorays specifically noted the label stating that the product was "CARB CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde." The Gorays chose Lumber Liquidators' flooring product because it was expressly represented as being CARB compliant for formaldehyde.

51.     The Gorays relied on the representations that the laminate wood flooring they were purchasing was CARB compliant for formaldehyde. They would not have purchased the product absent this representation.

52.     At the time that Plaintiffs purchased this laminate wood flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

54.     In November 2013, the Gorays installed the flooring in their home. By the beginning of 2014, Sophy began experiencing symptoms that include extreme shortness of breath, weakness, fatigue, and incessant coughing and sneezing. Soon after this, Mr. Goray began to experience similar symptoms. Their symptoms are consistent with exposure to unsafe levels of formaldehyde and have continued to persist.

55.     On or about March 8, 2015, Mr. and Mrs. Goray learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false. In light of the risks to their health, and particularly to the health of Mr. Goray and Sophy, the Gorays intend to have their flooring replaced.

56.     Had the Lumber Liquidators' laminate wood flooring been CARB compliant, the Gorays would have been satisfied with their purchase.

# VI.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

58.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of:

> All persons who, from January 1, 2011 to the present, purchased from Defendant in Arizona one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

59.     Excluded from the Class are governmental entities, Defendant, its affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, their family members, the members of this Court and its staff.

60.     Plaintiffs do not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control of Defendant. Plaintiffs believe that the Class encompasses many hundreds and perhaps thousands of individuals whose identities can be readily ascertained from Defendant's books and records. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

61.     Based on the size of the claims at issue, Plaintiffs believe the amount in controversy exceeds $5 million.

62.     All members of the Class have been subject to and affected by the same conduct.  All members purchased Chinese-made laminate wood flooring products from the Defendant that were falsely advertised as being known to be compliant with CARB standards for formaldehyde and were therefore safe to install in homes or businesses. Instead, the levels of formaldehyde in the flooring products were, at a minimum, unknown and in many cases emitting dangerous levels of formaldehyde. There are numerous questions of law and fact that are common to the class, and predominate over any questions

affecting only individual members of the Class. These questions include, but are not limited to, the following:

> Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

> Whether Lumber Liquidators' laminate wood flooring products that were manufactured in China and sold in Arizona exceed the CARB limit;

> Whether Lumber Liquidators falsely labeled and advertised its Chinese manufactured laminate wood flooring products as being CARB compliant;

> Whether any false representations by Lumber Liquidators regarding CARB compliance were made knowingly and willfully;

> Whether Lumber Liquidators breached express warranties to class members regarding its laminate wood flooring products pursuant to the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

> Whether Lumber Liquidators' affirmative misrepresentations as to its laminate wood flooring products being CARB compliant constitutes unfair or deceptive practices under Arizona's Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*;

> Whether Lumber Liquidators' Chinese manufactured laminate wood flooring products constitute an unreasonably dangerous product;

> Whether Lumber Liquidators' Chinese manufactured laminate wood flooring products were defective when they left Lumber Liquidators' control;

> Whether Lumber Liquidators is strictly liable for any injury, including economic loss, caused to Plaintiffs and members of their Class by manufacturing, selling, and/or distributing its Chinese manufactured laminate wood flooring products;

> Whether the above practices caused Class members to suffer injury; and

> The proper measure of damages.

63.     The claims of the individually named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

64.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class's claims and have retained attorneys who are qualified to pursue this litigation and have extensive experience in class actions – in particular, consumer protection actions.

65.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  Each Class Member is entitled to restitution of the price of the laminate wood flooring product and the cost of installation and removal of the unlawfully sold flooring products.  The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

66.     This putative class action meets the requirements of Fed.R.Civ.P. 23(b)(2) and Fed.R.Civ.P. 23(b)(3).

## VII.
## CLAIMS FOR RELIEF
## COUNT I
## VIOLATIONS OF THE MAGNUSON MOSS WARRANTY ACT,
## 15 U.S.C. § 2301, *et seq.*

67.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

68.     Plaintiffs bring this claim on behalf of themselves and on behalf of each member of the Class described above.

69.     The Ninth Circuit Court of Appeals recognizes that 15 U.S.C. § 2301, *et seq.* authorizes a private cause of action.  *Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912 (9th Cir. 2005).

70.   15 U.S.C. § 2310(d)(1) provides "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 USCS §§ 2301 et seq.], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."

71.   Plaintiffs and the other members of the class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

72.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

73.   Within the Class Period, Plaintiffs and members of their Class contracted with Defendant to purchase Defendant's laminate wood flooring products.

74.   Within the Class Period, Defendant sold Plaintiffs and member of their Class its laminate wood flooring products.

75.   The laminate wood flooring was purchased separate from the initial construction of the structure into which it was to be or has been installed and therefore constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

76.   Defendant's express warranties and written affirmations of fact that the laminate wood flooring was in compliance with CARB formaldehyde standards constitutes a written warranty within the meaning of 15 U.S.C. § 2301(6).

77.   Defendant breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

78.   Defendant's breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

79.   The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  The amount in controversy with respect to the class claims to be determined in this action exceeds the value of $50,000, exclusive of interest and costs.

80.     Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.

81.     Defendant violated 15 U.S.C. § 2310(d)(1).

82.     As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

**COUNT II**

**VIOLATIONS OF ARIZONA'S CONSUMER FRAUD ACT,**

**A.R.S. § 44-1521, *et seq.***

83.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

84.     Plaintiffs bring this claim on behalf of themselves and on behalf of each member of the Class described above.

85.     Arizona law recognizes a private cause of action under A.R.S. § 44-1521, *et seq. Sellinger v. Freeway Mobile Homes Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).

86.     A.R.S. § 44-1522 provides that "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

87.     Defendant's representations to Plaintiffs and members of their Class that its laminate wood flooring products are CARB compliant constitutes an "advertisement" within the meaning of A.R.S. § 44-1521(1).

88.     Defendant's laminate wood flooring products constitute "merchandise" within the meaning of A.R.S. § 44-1521(5).

89.     Defendant is a "person" within the meaning of A.R.S. § 44-1521(6).

90.     Within the Class Period, Plaintiffs and members of their Class contracted with

Defendant to purchase Defendant's laminate wood flooring products.

91.    Within the Class Period, Defendant sold Plaintiffs and member of their Class its laminate wood flooring products.

92.    Defendant's act of selling its laminate wood flooring products to Plaintiffs and members of their Class constitutes a "sale" within the meaning of A.R.S. § 44-1521(7).

93.    By falsely labeling its laminate wood flooring products as being CARB compliant, Defendant made materially false and deceptive representations regarding CARB compliance in connection with the sale of its laminate wood flooring products to Plaintiffs and members of their Class.

94.    Defendant intended to deceptively label its laminate wood flooring products as being CARB compliant and otherwise "compliant for formaldehyde."

95.  As a result of the actions described in paragraph 93& 94, Defendantviolated A.R.S. § 44-1522.

96.    As a direct and proximate result of Defendant's deceptive acts and concomitant violations of A.R.S. § 44-1522, Plaintiffs and members of their Class have been damaged in that they have not received the CARB compliant flooring product they were promised and paid for, and will be, required to pay the costs for removal and replacement thereof.  Because of the damage or injury Plaintiffs and members of their Class have suffered, they are entitled to relief as set forth in Section VIII of this Complaint.

97.    Moreover, Defendant's deceptive conduct and practices warrant the imposition of punitive damages because Defendant's wrongful conduct was wanton or reckless, entailed spite or ill will, or demonstrates a reckless indifference to the interests of others.

## COUNT III

## STRICT PRODUCTS LIABILITY

98.    Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

1    99.    Plaintiffs bring this claim on behalf of themselves and on behalf of each

2    member of the Class described above.

3    100.    Within the Class Period, Defendant manufactured, distributed, marketed,

4    and/or sold its laminate wood flooring products to Plaintiffs and members of their Class that

5    it represented as complying with CARB formaldehyde emission standards.

6    101.    Defendant's laminate wood flooring products in fact do not comply with

7    CARB formaldehyde emission standards.  Instead, those flooring products contain unsafe

8    levels of formaldehyde, a known human carcinogen.

9    102.    This design and/or manufacturing defect makes Defendant's laminate wood

10   flooring products unreasonably dangerous.

11   103.    Defendant's laminate wood flooring products pose an unreasonable danger to

12   Plaintiffs and members of their Class because those products emit excessive amounts of a

13   toxic substance, formaldehyde, which is known to cause cancer.

14   104.    The laminate wood flooring products manufactured, distributed, marketed,

15   and/or sold by Defendant were unreasonably dangerous and defective at the time they left

16   Defendant's control and remained unchanged and in that same condition at the time of the

17   harm suffered by Plaintiffs and members of their Class.

18   105.    As a direct and proximate cause of Defendant's manufacture, distribution,

19   marketing, and/or sale of the unreasonably dangerous and defectively designed and/or

20   manufactured laminate wood flooring products, Plaintiffs and members of their Class have

21   been damaged in that they have not received the CARB compliant flooring product they

22   were promised and paid for, and will be, required to pay the costs for removal and

23   replacement thereof, to avoid  exposure to the unsafe levels of formaldehyde emanating for

24   Defendant's laminate wood flooring in their homes.  Because of the damage or injury

25   Plaintiffs and members of their Class have suffered, they are entitled to relief as set forth in

26   Section VIII of this Complaint.

27   106.    Moreover, Defendant's deceptive conduct and practices warrant the

28   imposition of punitive damages because Defendant's wrongful conduct was wanton or

reckless, entailed spite or ill will, or demonstrates a reckless indifference to the interests of others.

## VIII.

## PRAYER FOR JUDGMENT

**WHEREFORE**, Plaintiffs and members of their Class pray for judgment against Defendants, including Does 1-100, and each of them as follows:

1. For an order certifying this action as a class action under Fed.R.Civ.P. 23, defining the Class as requested herein, and appointing the undersigned as class counsel;

2. For damages in an amount to be determined at trial for damages including actual, compensatory, and consequential damages incurred by Plaintiffs and Class Members;

3. For restitution in an amount to be determined at trial of all money and/or property that Plaintiffs and Class Members provided to Defendant for the purchase and installation of Defendant's Chinese-made laminate wood flooring products that were manufactured and sold in violation of the law;

4. For punitive damages in an amount to be determined at trial;

5. For an award to Plaintiffs and Class Members of reasonable attorneys' fees and costs pursuant to any applicable contract provision and applicable law, including, but not limited to, 15 U.S.C. § 2310(d)(2);

6. For prejudgment interest; and

7. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of April, 2015.

**KASDAN LIPPSMITH WEBER TURNER LLP**

By:   /s/ Stephen L. Weber
      Stephen L. Weber, Esq.
      Michael J. White, Esq.
      James W. Fleming, Esq.
      *Attorneys for Plaintiffs and Class*

1

### DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury on all causes of action triable thereby.

3

RESPECTFULLY SUBMITTED this 2nd day of April, 2015.

4

**KASDAN LIPPSMITH WEBER TURNER LLP**

5

6

By:   /s/ Stephen L. Weber

7

Stephen L. Weber, Esq.

8

Michael J. White, Esq.

James W. Fleming, Esq.

9

*Attorneys for Plaintiffs and Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28